**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Bankruptcy Case No.** 09-50779 |
| Dennis E. Hecker, | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | The Honorable Robert J. Kressel |
| _____ | ) | |
| CORNERSTONE Bank, | ) | |
| CORNERSTONE Holding Company, | ) | |
| Inc., and BLACKSTONE Financial, LLC, | ) | |
| | ) | **Adversary No.  09-05035** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Dennis E. Hecker, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CORNERSTONE BANK'S COMBINED OBJECTION AND BRIEF IN OBJECTION TO DENNIS E. HECKER'S MOTION FOR STAY OF ADVERSARY PROCEEDING UNTIL CONCLUSION OF GRAND JURY PROCEEDINGS AND/OR INDICTMENTS**

Cornerstone Bank, Cornerstone Holding Company, Inc., and Blackstone Financial, LLC, hereinafter jointly and severely referred to as "(Hecker) Cornerstone Bank," hereby objects to the Debtor, Dennis E. Hecker's, Motion for Order Staying the above-entitled Adversary Proceeding Until Conclusion of Grand Jury Proceedings and/or indictments and hereby files this Brief in support of its objections.

I.    FACTUAL SUMMARY

1.    Dennis Hecker filed for Chapter 7 bankruptcy relief on or about June 4, 2009.

2.    Cornerstone Bank timely filed an Adversary Complaint to determine discharge ability of indebtedness and/or complaint objecting to discharge.

3.      That similar non-dischargeable complaints were filed against Denny Hecker by the following entities:

     a.      Chrysler Financial, $68 Million;

     b.      US Bank, $11 Million;

     c.      Hyundai America, $20 Million;

     d.      Vision Bank, $7 Million;

     e.      Alliance Bank, $5 Million;

     f.      Gelco Corporation, $12 Million; and

     g.      Carlson Financial, $8 Million.

4.      No similar Motions for Stay of proceedings have been commenced in the above-referenced Adversary proceedings other than the present Adversary proceeding.

5.      For the reasons cited here within, this Court should deny Dennis Hecker's Motion for a Stay of the Cornerstone Adversary proceedings.

II.      **THIS COURT SHOULD DENY DENNIS HECKER'S MOTION FOR STAY OF CORNERSTONE ADVERSARY PROCEEDINGS**.

In the case of Fidelity National Title Insurance Company in New York v. National Title Resources Corporation, 980 F. Supp.1022(d), (MN. 1997), the Defendants sought a protective Order limiting the scope of his deposition until all related criminal proceedings' and investigations involving the Defendant had been completed. The Court denied the Defendant's Motion. The Court recognized that the Fifth Amendment to the Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. Id. The Court recognized that the Fifth Amendment protects an individual against being involuntarily called as a witness against himself in a criminal prosecution, but also privileges the witness not to answer official questions in any other civil or criminal proceeding when the answers might incriminate the witness in future

criminal proceedings. Id. at 1023; Lefkowitz v. Turley 414 U.S. 70 (1973); However, the Fidelity National recognized that the Fifth Amendment does not require a stay of civil proceedings pending the outcome of criminal proceedings. Id., 980 F. Supp. at 1024; Keating v. Opposite Thrift Supervision, 45 F 3d 322, 324, (9th Cir. 1995), Cert. Denied, 516 U.S. 827 (1995). The Fidelity National Court recognized that although a stay of a civil trial until factually related criminal proceedings are concluded and is sometimes warranted, a civil Defendant cannot seek a blanket invocation of the Fifth Amendment privilege. Id; Koester v. American Republic Investments, Inc., 11 F. 3d 818, 823 (8th Cir. 1993). In the absence of substantial prejudice to the rights of the parties involved, simultaneously parallel civil and criminal proceedings are unobjectionable under our jurisprudence. Id.; SCC v. Dresser Industries, Inc 628 F. 2d 1368, 1375 (D.C. 1980), Certs. denied, 449 U.S. 993 (1980).

To warrant a Stay, the Defendant must make a strong showing that the two proceedings, the civil and criminal, are so inter-related that the Defendant cannot protect himself at the civil trial by selectively invoking a Fifth Amendment privilege or that the two trials will so overlap that effective defense of both is impossible. Fidelity National, 980 F. Supp. at 1024; Federal Savings and Loan Insurance Corporation v. Molinaro, 889 F. 2d 899, 902 (9th Cir. 1989). To the extent to which a Defendant's Fifth Amendment rights are implicated, a Court may consider, when relevant, the following five factors:

1.  The interest of the Plaintiffs in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to the Plaintiffs of a delay;

2.  The burden which any particular aspect of the proceedings may impose on Defendants;

3.    The convenience of the Court and the management of the cases and the efficient use of judicial resources;

4.    Interest of persons not parties to the civil litigation; and

5.    Interest of the public in pending civil and criminal litigation.
Id.; Keating v. Office of Thrift Supervision, 45 F. 3d at 824; White v. Mapco Gas Products, Inc., 116 F.R.D. 498, 502 (E.D. Ark. 1987).

In Fidelity Insurance, the Court held that no grounds existed to grant the Defendant a stay of the litigation pending the outcome of all criminal proceedings and investigations.  The Fidelity Insurance Court held that the deposition of the Defendant was to proceed without limitation.  The Fidelity Insurance Court recognized that if the litigation was postponed, the interest in proceeding expeditiously with the action would be derailed.  The Court further recognized that witnesses relocate, memories fade, and persons allegedly aggrieved or unable to seek vindication or redress for indefinite periods of time.  Id.; Southwest Marine, Inc. v. Triple A Machine Shop, Inc. 720 F. Supp. 805, 809 (N.D. CA 1989); In Re Mid-Atlantic Anti-trust Litigation, 92 F.R.D. 358, 359 (D. MD. 1981); In Re Phillips, Beckwith and Hall, 896 F. Supp. 553, 559 (E.D.B.A. 1995).  In Mid-Atlantic Toyota Anti-trust Litigation, the Court held that dealership's were not entitled to delay resolution of the civil action, even to accommodate the parties' Fifth Amendment interest, if the parties' bankruptcy and adversary case will deteriorate as a result of the stay.

In Fidelity Insurance, the Court held that given that the indictment, if any, is not expected until months, at the earliest, and the potential for lengthy appeal should a conviction be returned, the Court held that a strong likelihood of a lengthy and

indeterminate delay in preparation of the civil trial would surely ensue if the Court granted a stay. Id.

The Fidelity Insurance Court held that the Fifth Amendment privilege cannot be utilized as both a sword and a shield where affirmative relief is voluntarily sought by a party.   The Fidelity Insurance Court held that since the Defendant had not been indicted, the Defendant was not encumbered with the burden of developing simultaneously both criminal and civil defenses.  The Fidelity Insurance Court observed that pre-indictment requests for stay of civil proceedings are generally denied. U.S. v. Private Sanitation Industry Association, 811 F. Supp. 802, 805 (E.D. N.Y. 1992).;  See also, SEC. v. Dresser Industries, Inc., 628 F. 2d at 1376.

In SEC. v. Dresser Industries, the Court recognized that a case for stay of civil proceeding is a far weaker case when no indictment has been returned.  628 F. 2d at 1376.  The Fidelity Insurance Court held that a Plaintiff was entitled to have its matter litigated without undue delay, and that the Defendant had no absolute right to be free from having to choose between testifying in the civil matter or invoking the Fifth Amendment privilege.   The Fidelity Insurance Court ordered that the deposition of Defendant could be sealed which related to the anticipated criminal investigation and in doing so strikes a proper balance between the competing forces and tensions.

The Court recognized that in the case of General Dynamics Corporation v. Selb Manufacturing Company, 481 F. 2d 1204, at 1215, *8th Cir. 1973), a civil Defendant was required to answer interrogatories during the pendency for related criminal proceedings. The General Dynamics Court dismissed the Defendants Counterclaim as a sanction for the Defendant's failure to respond to outstanding interrogatories.  The reviewing Court

approved the Trial Court's suggestion that the Answers to Interrogatories could have been sealed except for use of the parties and their counsel in civil litigation and that the civil trial could have proceeded under an imposed Order that would have restricted the Defendant's testimony to the civil proceeding as such was necessary to protect the Defendant's rights.  By proceeding in such a fashion, justice for both sides was served and obviated the troublesome problem presented.  See also <u>Valentin</u>, by and through <u>Valentin v. Richardon</u>, 110 F.R.D. 622, 628 (D. Mass. 1986) (citing <u>General Dynamics Corp. v. Selb. Manufacturing Company</u>; 481 F. 2d at 1215; <u>Waldbaum v. World Vision Enterprises, Inc.</u> 84 F.R.D. 95, 98 (S.D. N.Y. 1979) <u>D'Ippolito v. American Oil Company</u>, 272 F. Supp. 310, 312 (S.D.N.Y. 1967).

A similar result in the case of <u>Allstate Insurance Company v. Alivio Chiropractic Clinic, Inc.</u>, 2008 W.L. 1945157 (D. Minn.).   In <u>Allstate</u>, the Plaintiffs, Insurance Companies filed a complaint, alleging the Defendants conspired to defraud them on medical expense benefits under Minnesota's No-fault Automobile Insurance Act.  The complaint further alleged the violation of Racketeering Influenced Corrupt Organization's Act (RICO), as well as asserting state law claims, conspiracy, no-fault fraud, health care fraud, and common law fraud.  The Defendants filed a Motion for Stay of the civil proceedings pending resolution of federal and criminal investigations.  A Federal Court Magistrate noted that a grand jury had been impaneled, that the Defendants received a "target" letter from the Office of the United States Attorney General, search warrants had been executed on business premises, and that a criminal investigation had in fact been conducted.  The Federal Court Magistrate recommended that at the Defendant's Motion for Stay be granted.  The matter was appealed to the

presiding Federal Judge.   The presiding Federal Judge reversed the Magistrate and held the civil matter should, in fact, be recommended.   The Allstate Court observed that a court may, in its discretion, grant a stay of a pending civil action in order to avoid interfering with the pending criminal investigation.  However, the Allstate Court observed the Fifth Amendment does not ordinarily require stay of civil proceedings pending the outcome of criminal proceedings.   The Allstate Court further recognized that a stay of a civil trial until factually related criminal proceedings are concluded is sometimes warranted; however, the Allstate Court recognized that a civil Defendant cannot hide behind a blanket invocation of the Fifth Amendment privilege.   The Allstate Court held in the absence of a substantial prejudice to the rights of the parties involved, simultaneously parallel civil and criminal proceedings are unobjectionables under our jurisprudence.   See Fidelity National Title Insurance Company NY v. National Title Resources Corporation, 980 F. Supp. 1022 (D. Minn. 1997); Koester v. American Republic Investments, Inc., 11 F. 3d 818, 823 (8th Cir. 1993); SCC v. Dresser Industries, Inc., 628 F. 2d 1368, 1375 (D.C. 1980).   The Allstate Court held to warrant a stay.   A Defendant must make a strong showing either that the two proceedings that are so interrelated that the Defendant cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege or that the two trials will so overlap that effective defense of both is impossible.   The Allstate Court denied the Defendant's continued stay since the Defendants had not been indicted, a criminal prosecution remained purely conjectural, and the Allstate Court was unable to determine if and when prosecution would ever commence.  The Allstate Court further recognized that allowing a stay to continue gives rise to the danger highlighted by the Plaintiff, that witnesses

relocate, memories fade, and a faith, and a stay prevents persons allegedly aggrieved from seeking vindication or redress for infinite periods of time.   See also <u>Fidelity National Title Insurance Company v. National Title Resource Company</u>, 980 F. Supp. at 1024.; <u>Southwest Marine, Inc. v. Triple A Machine Shop, Inc</u>., 720 F. Supp. 805, 809 (N.D. Cal. 1989).   The <u>Allstate</u> Court recognized <u>a Defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege</u>.   <u>Id</u>.   The <u>Allstate</u> Court held that the interest of the Plaintiffs, the Court, and the public outweighed any potential prejudice to the Defendants.

In the case of in re <u>Mid-Atlantic Toyota Anti-trust Litigation Comp</u>., 92 F.R.D. 358 (D. Maryland 1981), six Toyota Dealers in the anti-trust litigation sought a stay of the anti-trust litigation pending resolution of Grand Jury investigations of possible criminal anti-trust violations and also pending resolution of future, as yet undetermined, criminal proceedings.   The <u>Toyota</u> Court denied the request for a blanket stay.   The <u>Toyota</u> Court recognized that the delay sought by the Defendants were unprecedented in its scope.   The <u>Toyota</u> Court recognized that the Defendants sought a stay pending completion of any criminal actions that may arise from Grand Jury investigations but also sought a stay pending completion of any criminal proceedings that might be brought at some unspecified future time.   The <u>Toyota</u> Court observed that no cases were cited in which a blanket stay of speculative circumstances were granted.   The <u>Toyota</u> Court held that to approve a stay pending completion of any criminal actions and any future criminal actions that may arise, however remote, would prejudice the Plaintiff in all instances.   The <u>Toyota</u> Court recognized that witnesses relocate, memories fade, and persons allegedly aggrieved, are unable able to seek vindication or redress if

extensions or stays are granted pending the outcome of criminal proceedings. The Toyota Court held that when examining the Golden Quality Ice-cream Company v. Deerfield Specialty Paper, Inc., five factors in determining whether to grant a stay in the civil proceeding in response to pending or threatened criminal proceedings, the courts traditionally examine:

1.    Interests of the Plaintiff in proceeding expeditiously with the civil action as a balance against the prejudice to the Plaintiffs if delay granted;

2.    The burden on the Defendants;

3.    The convenience to the Courts;

4.    The interests of the persons not parties to the civil litigation; and

5.    The public interest.

The Toyota Court held that the prejudice to the Plaintiff in most instances outweighs any benefit of a delay. The Toyota Court examined the second factor, the burden upon the civil Defendants without a stay. The Toyota Court held that the stay request should be denied. The Toyota Court held that when criminal proceedings are not currently pending against Defendants, the Defendants are not encumbered with any burden of developing simultaneously criminal and civil defenses. The Toyota Court further held that when civil Defendants are not subject to any criminal charges at the time of seeking a stay, the inappropriateness of a stay is manifest. Moreover, the Toyota Court recognized that a Court can fashion remedy in which the testimony of the Defendants are sealed and can only be used in the civil proceeding.

The Toyota Court held that the third factor, the convenience of the Court, have been referred to as to the attempt by courts to avoid whenever possible duplicative judicial effort. The Toyota Court held that since no criminal charges have been filed

against the civil Defendants, there were no duplicative judicial efforts to avoid.   The
Toyota Court examined the forth factor, a great concern of the Court, the protection of
interest of persons who are not parties to the present civil litigation.   The Toyota Court
recognized that extra-ordinary remedy of a Stay was not necessary to protect the
interest of both parties concerned.   The Toyota Court recognized that the Court could
rule on individual assertions of the Fifth Amendment privilege if and when such
assertions occur, then discovery can still proceed forward and the non-defendant
witnesses will be afforded the protections they deserve.   The Toyota Court examined
the fifth and final Golden Quality factor, a focus on public interest.   The Toyota Court
held that since there has been no conscious decision by public representatives to
prosecute criminal actions against any of the Defendants involved, no public interest
existed in granting a stay.   The Toyota Court denied the Defendants a stay despite
ongoing criminal Grand Jury investigations.

        The same result was reached in the case of Avalonbay Communities, Inc. v. San
Jose Water Conservation Corp., 2007 W. L. 2481291 (E.D. Virginia).   The Avalonbay
Communities filed an action against Defendants, San Jose Water Conservation
Corporation for fraud and deceit, upon just enrichment, civil and statutory conspiracy,
civil RICO claims and breach of contract.   The Plaintiffs alleged that Defendants failed
to perform contract at work at several apartment complexes and submitted false
invoices and received over $3,000,000 for work never completed.    The Defendants
were subject to a civil forfeiture proceeding commenced by the Federal Bureau of
Investigation and were subject to a criminal Grand Jury investigation by the United
States Attorneys Office.   The Defendants moved to stay the civil court proceedings so

the Defendants would not be constitutionally burdened by either the Defendant's civil testimony possibly providing evidence in future criminal prosecution or the Defendant's asserting the Fifth Amendment privilege in the civil litigation and having an adverse inference drawn against the Defendants.  The Court recognized the Golden Quality five factors and held that the Defendant's Motion for Stay in the civil proceedings would be denied.  The Court held that the prejudice to the Plaintiff outweighed any constitutional burden upon the Defendants.  The Court further held that a Stay could result in documents being misplaced, memories fading, and the Defendants would have fewer monetary resources available for Plaintiff to collect should a financial judgment in the litigation be stayed.  The Court held that any harms that could be suffered by the Defendants was not sufficient to outweigh the Plaintiff's prejudice because Defendants have not been indicted and do not have a prepared defense in any simultaneous case. The Court further held that the Defendants failed to demonstrate by clear and convincing evidence that their hardships outweighed the prejudice to Plaintiff.

The same result was reached in the case as stated, Connecticut v. BPS Petroleum Distributions, Inc., 1991 W. L. 177657 (D. Conn.).  In BPS Petroleum, the Court recognizes that the Plaintiff would be prejudice by an indefinite stay in the civil proceedings and that the Defendants request of a stay of civil proceedings until the Grand Jury investigation and any resulting criminal proceedings are completed was inappropriate since it was unknown whether any indictment would be returned.  In the case of in re MGL Corporation, 262 B. R. 324 (Bankruptcy E.D. Pennsylvania 2001), Defendant in the bankruptcy turnover proceeding commenced by the Chapter 11 trustee moved for stay of discovery.  The Bankruptcy Court held that the discovery and the

turnover proceedings would not be stayed.  The Court held that the stay of civil proceedings during the pendency of a criminal proceeding is not constitutionally required.  The Court further noted that it is incidental to the power inherent to any Court to control the disposition of the causes on its docket with the economy of time and effort, and the Court held that the delay the Defendants sought would be unprecedented in its scope not only to the Defendants seeking a Stay pending completion of any criminal actions which may arise from the current Grand Jury investigation, but would seek a Stay pending completion of any criminal proceedings which may be brought at some unspecified future time.

## III.   CONCLUSIONS

For the reasons cited here within and upon review of the Five Golden Oaks factors, this Court should deny Hecker's Motion for Stay of the present Adversary proceeding pending the outcome of any Grand Jury investigation and criminal actions. This Court cannot piecemeal grant a Stay of the present Adversary proceeding without granting a Stay of all Adversary proceedings.  Otherwise, Cornerstone Bank would be greatly prejudiced being unable to prosecute its adversary case while the other nine adversary cases are allowed to proceed forward, obtain a judgment, and seek to enforce on the judgment prejudicial to the interests of Cornerstone Bank.  The granting of any Stay of any Adversary proceedings must be uniform as to all Hecker Adversary proceedings and until such occurs, this Court must deny Hecker's Motion for Stay in the present Adversary proceedings for the reasons cited here within.

Dated this 15th day of October, 2009.


/s/ Brad A. Sinclair
Brad A. Sinclair (#0161652), of
SERKLAND LAW FIRM
10 Roberts Street
PO Box 6017
Fargo, ND  58108-6017
(701) 232-8957
**ATTORNEYS FOR
CORNERSTONE BANK**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2481291 (E.D.Va.)
(Cite as: 2007 WL 2481291 (E.D.Va.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Virginia,
Alexandria Division.
AVALONBAY COMMUNITIES, INC., Plaintiff,
v.
SAN JOSE WATER CONSERVATION CORP. et
al., Defendants.
Civil Action No. 07-306.

Aug. 27, 2007.
Kenneth B. Weckstein, Epstein Becker Green PC,
Washington, DC, for Plaintiff.

Christie A. Leary, Greenspun & Mann PC, Fairfax,
VA, for Defendants.

*MEMORANDUM OPINION*
GERALD BRUCE LEE, United States District
Judge.

*1 THIS MATTER is before the Court on Defend-
ants' Motion to Stay. This case concerns whether
Defendants' Fifth Amendment rights are implicated
in having to defend a civil action while there is an
ongoing criminal investigation of Defendants and
whether a stay should be granted in this action be-
cause of the burden on Defendants in having to
simultaneously participate in civil litigation and to
protect their criminal rights. The Court holds that
Defendants' motion is denied because, though De-
fendants' are constitutionally burdened, this burden
does not weigh more heavily than the prejudice that
would result to Plaintiff by granting a stay in this
action.

**I. BACKGROUND**
On March 29, 2007, Plaintiff Avalonbay Com-
munities, Inc. filed action against Defendant San
Jose Corporation for (1) fraud and deceit, (2)
breach of contract, (3) unjust enrichment, (4) civil
and statutory conspiracy, and (5) civil RICO
claims. Plaintiff owns 45 properties in eight differ-

ent states and alleged that Defendant failed to per-
form contracted work at several apartment com-
plexes. Plaintiff claimed that Defendant submitted
false invoices and received over $3 million dollars
from Plaintiff for work never completed. Plaintiff
also alleged that Defendant misrepresented its li-
censing status and its qualifications to complete the
contracted work.

Defendant moved to dismiss all counts. On July 16,
2007 this Court ordered that Defendant's motion as
to Count 1 was granted and denied as to Count 2-5.
Plaintiff was given leave to amend its Complaint.

On July 27, 2007 Plaintiff filed an Amended Com-
plaint and added Michael Schroll, the owner of De-
fendant San Jose, as a defendant. Plaintiff claimed
Defendant Schroll conspired with James Wilden, a
former employee of Plaintiff, to conceal Defendant
San Jose's licensing status and to authorize the
fraudulent invoice payments. Plaintiff alleged that
Defendants gave Wilden kickback payments. De-
fendant San Jose asserted the Fifth Amendment
privilege in response to Plaintiff's new allegations
and filed motion to bring Wilden in as a third party
defendant. *See* Def.'s Answer and Def .'s Motion
for Third Party Claim.

Defendant San Jose is now the subject of a civil
forfeiture proceeding by the Federal Bureau of In-
vestigation ("FBI") and the subject of a criminal
grand jury investigation by the United States Attor-
neys Office ("USAO"). Defendants move to stay
this civil proceeding so that Defendants will not be
constitutionally burdened by either (1) having De-
fendant Schroll's civil testimony possibly provide
evidence in a future criminal prosecution or (2)
having Defendant Schroll assert his Fifth Amend-
ment privilege in the civil litigation and having an
adverse inference drawn against Defendants.

**II DISCUSSION**
A. *Standard of Review*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2481291 (E.D.Va.)
(Cite as: 2007 WL 2481291 (E.D.Va.))

Page 2

Courts have discretion in whether to grant a motion to stay. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). The power to stay is within the court's control of the docket. *See Id* . The parties and issues do not need to be the same for the court to grant a stay in one case to accommodate another case. *See Id.* Federal courts have used the balancing test set in *Landis* that weighs the hardship to the moving party against the prejudice to the opposing party. *See Id.* at 255 (holding that a party requesting a stay must show hardship if there is even a fair possibility that a stay would damage the opposing party); *see also Williford v. Armstrong World Indus., Inc.,* 715 F.2d 124, 127 (4th Cir.1983) ("Party seeking stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."). Additional considerations have been interests of persons not party to the civil litigation, the public interest, the danger of discovery abuse, bad faith, the status of the criminal proceedings, etc. *See Afro-Lecon, Inc. v. United States,* 820 F.2d 1198, 1202-1204 (Fed.Cir.1987); *In re Phillips, Beckwith & Hall,* 896 F.Supp. 553, 558 (E.D.Va.1995).

**\*2** The court in *In re Mid-Atlantic Toyota Antitrust Lit.* used a five factor test that includes some of the additional factors that federal courts have considered in stay motions: (1) interest of plaintiff in proceeding expeditiously balanced against prejudice to plaintiff caused by delay, (2) burden on defendant, (3) convenience to the court, (4) interests of persons not party to the civil litigation and (5) the public interest. **92 F.R.D. 358, 359 (D.C.Md.1981).**

Much of the case law involving motions to stay civil proceedings until the completion of criminal proceedings concerns cases where the government is opposing the same private party. *See In re Phillips,* 896 F.Supp. at 557 (noting the dilemma surrounding use of Fifth Amendment in parallel cases can arise between private litigants but more often when the government is the opposing party). Courts have been concerned that in these cases the govern-

ment will purposely initiate parallel civil and criminal proceedings to (1) use the more liberal civil discovery rules to gain information for the corresponding criminal trial that would normally be restricted under criminal discovery rules and (2) to gain advantage in the civil trial by forcing parties to choose between exposing themselves to criminal prosecution by testifying or asserting the Fifth Amendment and, thereby, damaging their civil defense. *See In re Phillips,* 896 F.Supp. at 558. An adverse inference can be drawn against litigants who assert their Fifth Amendment right in a civil proceeding. *See Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976).

**B.** *Analysis*

The Court holds that Defendant's Motion to Stay is denied because, though the Court finds that Defendants' Fifth Amendment rights are implicated, the prejudice to Plaintiff outweighs any constitutional burden on Defendants. In deciding a motion to stay, the Court is required to balance the competing interests of the parties. *See Landis,* 299 U.S. at 254-255. Plaintiff will be prejudiced by the undeterminable time length of any criminal prosecution because this makes it more likely that: (1) documents will be misplaced, (2) memories will fade and (3) Defendants will have fewer monetary resources available for Plaintiff to collect on any financial judgment. The burden on Defendants is not sufficient to outweigh Plaintiff's prejudice because Defendants have not been indicted and do not have to prepare a defense in simultaneous cases.

The Court holds that balancing the competing interests of the parties and using the additional factors set in *In Re Mid Atlantic,* shows that a stay would be inappropriate.

*a. Burden on Defendants Versus Prejudice to Plaintiff*

*i. Burden on Defendant*

First, the Court holds that the Fifth Amendment

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2481291 (E.D.Va.)
(Cite as: 2007 WL 2481291 (E.D.Va.))

Page 3

right of Defendant Schroll does create a constitutional burden for Defendants. Individuals can assert their right to the Fifth Amendment in civil litigation. See *Baxter,* 425 U.S. at 318. While a corporation does not have right to the Fifth Amendment privilege, an individual speaking on behalf of a corporation can assert the Fifth Amendment privilege. *See In re Mid-Atlantic,* 92 F.R.D. at 360. The corporate representative need not be indicted to claim the Fifth Amendment privilege. *See Hoffman v. U.S.,* 341 U.S. 479 (1951)(corporate manager could claim privilege even if not indicted if answers could lead to link in the chain of evidence that contributes to criminal conviction); *See also Afro-Lecon,* 820 F.2d 1198 at 1203. When required to answer a corporation cannot simply point to a person who faces self-incrimination in order to create a Fifth Amendment privilege for the corporation. *See United States v. Kordel,* 397 U.S. 1, 8 (1970).

*3 Defendant Schroll is the sole owner and president of Defendant San Jose and Defendants have asserted that Defendant Schroll is the only corporate representative with the requisite knowledge to speak on behalf of Defendant San Jose. Plaintiff does not deny that Defendant is the only appropriate representative. Plaintiff responds by citing *United States v. Stone,* 976 F.2d 909, 912 (4th Cir.1992) which held that a corporate owner could not refuse to turn over subpoenaed business records by claiming a Fifth Amendment privilege just because the corporation was a one-man operation. *Stone* is distinguished from the current situation because Defendant San Jose has produced business records and is claiming a constitutional burden only in regards to testimonial evidence. This Court does not hold that Defendant Schroll is in fact the only individual who can speak on behalf of Defendant San Jose. The Court holds that Defendants are constitutionally burdened by having either to prepare an adequate civil defense that includes testimony of Defendant Schroll, but possibly opens up evidence for future criminal prosecution, or to prepare a civil defense without Defendant Schroll's testimony that will likely be inadequate.

**ii. Balancing Burden and Prejudice**

Defendants' Motion to Stay is denied because the constitutional burden placed on Defendants because of the threat of criminal prosecution does not outweigh the prejudice created to Plaintiff by having to sit aside for an undeterminable amount of time. A party seeking a stay must show by clear and convincing evidence that the party's hardship outweighs the prejudice to the opposing party. *See Williford,* 715 F.2d at 127. Federal courts have held that a stay is most appropriate in situations where a party is under indictment for a serious offense. *See SEC v. Dresser Indus. Inc.,* 628 F.2d 1368, 1376 (C.A.D.C.1980)("Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter."). The burden on a party in making incriminating statements weighs more heavily when serious charges have been initiated and the constitutional obligation of a speedy criminal trial could help protect the opposing civil party from a significant delay. *See Trustees of the Plumbers v. Transworld Mechanical,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995).

At present, the Court has no knowledge of whether the investigation and forfeiture proceeding against Defendant San Jose will lead to a criminal indictment against Defendants and, if so, the seriousness of the possible charges. The scope of the criminal prosecution is unlimited. Defendant San Jose is currently under investigation by the USAO and undergoing forfeiture proceedings initiated by the FBI. An indictment by one of these agencies does not ensure that there will not be separate charges later brought by the other. *See In re Mid-Atlantic,* 92 F.R.D. at 359 (stay was inappropriate where party had not been indicted and criminal proceedings could take unspecified amount of time because charges could be brought by Department of Justice,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 2481291 (E.D.Va.)
(Cite as: 2007 WL 2481291 (E.D.Va.))

Page 4

Maryland Attorney General or state officials). In addition to the unrestricted scope of any initial criminal prosecution, there is also the possibility that related criminal charges such as obstruction of justice and perjury could continue after a criminal trial is completed. *See In re Phillips,* 896 F.Supp. at 558.

*4 A stay that is unrestricted in scope will certainly prejudice Plaintiff by risking the loss of documents, the fading of witnesses' memories, and the deterioration of Defendants' financial resources available for any judgment obtained by Plaintiff. Defendants argue that the cases will involve the same facts and evidence will thus be preserved. Because the commencement date of any criminal proceeding and the exact nature of these proceedings is unknown, Defendants can not guarantee that evidence will not be lost before criminal prosecution.

Defendants face a constitutional dilemma, but the Fifth Amendment privilege does not come without cost in the civil arena. *See In re Phillips,* 896 F.Supp. at 560-561 (quoting *United States v. Taylor,* 975 F.2d 402, 404 (7th Cir.1992). Virtually all of the cases relied on by Defendants involved situations where the government was the opposing party in the civil and criminal cases. There has not been suggestion that Plaintiff has tried to take advantage of Defendants' threat of criminal prosecution, an underlying fear in the cases cited by Defendants. Plaintiff has attempted to accommodate Defendants by agreeing to stay oral civil discovery. *See* Defs.' Joint Motion for Extension of Time.

*b. Additional Considerations*

Considering the other factors used in *In re Mid-Atlantic* also shows that a stay would be unwarranted. First, a stay is not convenient to the Court because this judicial district has a policy of efficient and expeditious resolution of cases. Second, neither party has identified an interest by persons not party to the civil litigation. Third, it is not in the public interest to require plaintiffs to wait for their day in court for an undefined time period because a de-

fendant may or may not face criminal prosecution in the future. Because Plaintiff will be prejudiced by the unrestricted delay created by staying the civil proceeding until the threat of criminal prosecution subsides, the Defendants' Motion for a Stay is denied.

### III. CONCLUSION

For the forgoing reasons the Court denies Defendants' Motion to Stay. Defendants brought motion for a stay of the civil action because testimony in the civil proceeding could provide evidence for later criminal prosecution or Defendants would have to assert the Fifth Amendment privilege and imperil their civil defense. Defendants are under threat of criminal prosecution, but have not been indicted. A stay would be unlimited in scope and the time delay would deteriorate Plaintiff's case. Because Defendants' burden is not greater than the prejudice that would result to Plaintiff, Defendant's Motion for a Stay is denied.

For the forgoing reasons, it is hereby

ORDERED that Defendants' Motion for a Stay is DENIED.

The Clerk is directed to forward a copy of this Order to counsel.

Not Reported in F.Supp.2d, 2007 WL 2481291 (E.D.Va.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2008 WL 1945157 (D.Minn.)
(Cite as: 2008 WL 1945157 (D.Minn.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
ALLSTATE INSURANCE COMPANY and Deer-
brook Insurance Company, Plaintiffs,
v.
ALIVIO CHIROPRACTIC CLINIC, INC., D.C.
Joshua Jason Anderson, and Alexis
Alarcon Aguilar, Defendants.
**Civil No. 06-3241 (JNE/RLE).**

April 30, 2008.
Christopher M. Drake, Richard S. Stempel, Stempel
& Doty, PLC, Hopkins, MN, Eric S. Hayes, Brown
& Carlson PA, Mpls, MN, for Plaintiff.

John B. Wolfe, Jr., Wolfe & Associates, Jennifer
M. Macaulay, Macaulay Law Offices, St. Paul,
MN, Richard G. McGee, Law Office Of Richard G.
McGee, LLC, Plymouth, MN, for Defendant.

ORDER
JOAN N. ERICKSEN, District Judge.

**\*1** This case is before the Court on a Report and
Recommendation issued by the Honorable Ray-
mond L. Erickson, Chief United States Magistrate
Judge, on March 28, 2008. The magistrate judge re-
commended that Plaintiffs' Motion to Lift Stay be
granted. Defendants objected to the Report and Re-
commendation, and Plaintiffs responded to the ob-
jections. The Court has conducted a de novo review
of the record. *See* D. Minn. LR 72.2(b). Based on
that review, the Court adopts the Report and Re-
commendation. Therefore, IT IS ORDERED THAT:

1. Plaintiffs' Motion to Lift Stay [Docket No. 24] is
GRANTED.

REPORT AND RECOMMENDATION
RAYMOND L. ERICKSON, United States Chief

Magistrate Judge.

I. *Introduction*
This matter came before the undersigned United
States Magistrate Judge pursuant to a special as-
signment, made in accordance with the provisions
of Title 28 U.S.C. § 636(b)(1)(B), upon the
Plaintiffs' Motion to Lift Stay. A Hearing on the
Motion was conducted on February 21, 2008, at
which time, the Plaintiffs appeared by Richard S.
Stempel, Esq.; and the Defendants appeared by
Richard G. McGee, Esq. For reasons which follow,
we recommend that the Plaintiffs' Motion to Lift
Stay be granted.

II. *Factual and Procedural Background*
The Plaintiffs Allstate Insurance Company, and
Deerbrook Insurance Company, filed a Complaint
in which they allege that the Defendants conspired
to defraud them on medical expense benefits, under
the Minnesota No-Fault Automobile Insurance Act,
*Minnesota Statutes Section 65B.42 et seq.* See,
*Complaint, Docket No. 1.* The Complaint further al-
leges a violation of the Racketeer Influenced Cor-
rupt Organizations Act ("RICO"), as well as assert-
ing State law claims of conspiracy, no-fault fraud,
healthcare fraud, and common law fraud relating to
no-fault insurance claims submitted by claimants
receiving chiropractic care at Alivio Chiropractic
Clinic, Inc. (the "Clinic"), from chiropractor Joshua
Jason Anderson ("Anderson"). The Complaint also
names Alexis Alarcon Aguilar as a Defendant, and
alleges that she served as a "runner" for the Clinic.

The Plaintiffs filed the Complaint in August of
2006, see, *Docket No. 1,* and a Scheduling Order
was issued in October of 2006. See, *Docket No. 9.*
On November 17, 2006, the Defendants filed a Mo-
tion to Stay the Proceedings pending resolution of a
factually-related Federal criminal investigation, see,
*Docket No. 10,* which was granted, upon Recom-
mendation of a Magistrate Judge, by Order of the
District Court, the Honorable Patrick J. Schiltz
presiding, dated January 12, 2007. See, *Docket No.*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1945157 (D.Minn.)
(Cite as: 2008 WL 1945157 (D.Minn.))

20. In her Recommendation that the Motion for a Stay be granted, Magistrate Judge Jeanne J. Graham noted that a Grand Jury had been impaneled, that Anderson had received a "target letter" from the Office of the United States Attorney General for the District of Minnesota, that Search Warrants had been executed on the business premises of Anderson and the Clinic, and that Anderson had met with a member of the Attorney General's Office regarding the criminal investigation. [FN1] See, *Docket No. 19.* The case was reassigned to us on August 21, 2007. See, *Docket No. 21.*

> FN1. As noted by the Magistrate Judge, the facts in this case are related to the case of *Progressive Northern Insurance Company, et al. v. Alivio Chiropractic Clinic, Inc., et al.,* Civ. No. 05-951 (JNE/RLE), which was filed in May of 2005, and was stayed by Order dated March 15, 2006. See, *Docket No. 150.* In that matter, we recommended that the Stay be continued on July 2, 2007, see, *Docket No. 176,* and the District Court adopted that recommendation by Order dated July 20, 2007. See, *Docket No. 177.* The stay in *Progressive v. Alivio* remains in place as of the date of this Recommendation.

*2 On January 30, 2008, we held a Status Conference in this matter, see, *Docket No. 23,* following which, the Plaintiffs filed a Motion to Lift Stay. See, *Docket No. 24.* The Defendants oppose the Motion.

**III. Discussion**
*The Plaintiffs' Motion to Lift Stay.*

The Plaintiffs argue that the Stay in this matter should be lifted, as over one (1) year has passed since the "target letter" was issued to Anderson, upon which the Court issued a Stay and, since that time, there has been no further action in the criminal investigation, and neither Anderson, or any other Defendant, has been indicted. Thus, the Plaintiffs claim that the original rationale for imposing the

Stay, which was to avoid a conflict between the underlying criminal case and this matter, is no longer valid, and that, therefore, the case should be allowed to proceed. The Defendants oppose lifting the Stay, and argue that the criminal investigation is still pending. See, *Affidavit of William Michael Jr., Docket No. 32,* at ¶¶ 3-4.

A. *Standard of Review.* The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." *United States Constitution Amend. V.* Notably, the Amendment not only protects an individual against being involuntarily called as a witness against himself in a criminal prosecution, but also privileges him not to answer official questions, that are put to him in any other proceeding, civil or criminal, formal or informal, when the answers might incriminate him in future criminal proceedings. See, *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973).

A Court may, in its discretion, grant a stay of a pending civil action in order to avoid interfering with a pending criminal investigation, see, *Lunde v. Helms,* 898 F.2d 1343, 1345 (8th Cir.1990), or to preserve the ability of a defendant to assert his Fifth Amendment privilege in a pending criminal proceeding involving the same subject matter. See, *Turley v. United States,* 2002 WL 31097225 at *2 (W.D.Mo., August 22, 2002)("The rationale behind such a stay is that a litigant should not be allowed to use the liberal discovery procedures applicable to a civil suit to avoid restrictions on criminal discovery and obtain documents he would not otherwise be entitled to for use in his criminal suit."), citing *Campbell v. Eastland,* 307 F.2d 478, 488 (5th Cir.1962).

Nevertheless, the Fifth Amendment does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. See, *Keating v. Office of Thrift Supervision,* 45 F .3d 322, 324 (9th Cir.1995), cert. denied, 516 U.S. 827 (1995). Otherwise stated, although "[a] **stay of a civil trial until factually related criminal proceedings are con-**

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1945157 (D.Minn.)
(Cite as: 2008 WL 1945157 (D.Minn.))

Page 3

cluded is sometimes warranted[,] a civil defend-
ant cannot hide behind a blanket invocation of
the Fifth Amendment privilege." *Fidelity Nation-
al Title Ins. Co. of N.Y. v. National Title Re-
sources Corp.*, 980 F.Supp. 1022, 1024
(D.Minn.1997), quoting *Koester v. American Re-
public Investments, Inc.*, 11 F.3d 818, 823 (8th
Cir.1993). "In the absence of substantial prejudice
to the rights of the parties involved,
[simultaneously] parallel [civil and criminal] pro-
ceedings are unobjectionable) under our jurispru-
dence." *Id.*, quoting *SEC v. Dresser Industries, Inc.*,
628 F.2d 1368, 1375 (D.C.Cir.1980).

*3 As our Court of Appeals observed, "to warrant a
stay, defendant must make a strong showing either
that the two proceedings are so interrelated that he
cannot protect the civil trial by select-
ively invoking his Fifth Amendment privilege * * *
or that the two trials will so overlap that effective
defense of both is impossible." *Koester v. American
Republic Investments, Inc.*, supra at 823, citing *An-
gdala v. Sprague*, 822 F.2d 1035, 1036-37 (11th
Cir.1987). In making this determination, a Court
must consider the particular circumstances, and the
competing interests, that are involved in each case.
See, *Federal Savings and Loan Ins. Corp. v. Molin-
aro*, 889 F.2d 899, 902 (9th Cir.1989).

In addition to considering the extent to which a de-
fendant's Fifth Amendment rights are implicated, a
Court may consider, where relevant, the following
five (5) factors:
   (1) the interest of the plaintiffs in proceeding ex-
   peditiously with this litigation or any particular
   aspect of it;
   (2) the burden which any particular aspect of the
   proceedings may impose on defendants;
   (3) the convenience of the court in the manage-
   ment of its cases, and the efficient use of judicial
   resources;
   (4) the interests of persons not parties to the civil
   litigation; and
   (5) the interest of the public in the pending civil
   and criminal litigation.

*Keating v. Office of Thrift Supervision*, supra at
324-25; see also, *White v. Mapco Gas Products,
Inc.*, 116 F.R.D. 498, 502 (E.D.Ark.1987)(same).

B. *Legal Analysis.* In granting a Stay in these pro-
ceedings in January of 2007, the District Court ad-
opted the Magistrate Judge's Recommendation, that
found that the criminal investigation of the Defend-
ants, which was pending at that time, involved the
same claims, and issues, as those in this case. See,
*Recommendation*, supra at p. 3; *Order*, supra. In
their Motion to lift the Stay, the Plaintiffs argue
that this matter was originally filed in August of
2006, and that, in the thirteen (13) months since
this matter was stayed, very little progress has been
observable in the pending criminal investigation.
Although a "target letter" was sent to Anderson,
and the Defendants have submitted evidence, in the
form of an Affidavit by the attorney that Anderson
has retained for his defense against possible crimin-
al charges, that the criminal investigation of Ander-
son is ongoing, Anderson has not been indicted,
and no other Defendant has been named as the pos-
sible subject of a criminal investigation. Thus, any
criminal prosecution remains purely conjectural at
this point and, on the Record before us, we are un-
able to determine if, or when, such a prosecution
will ever commence. [FN2]

> FN2. If, as the Defendants fear, they are
> indicted, we are not powerless to consider
> the need for a Stay afresh. However, the
> reality is that a Stay will necessarily be in-
> definite, for the circumstances that the De-
> fendants emphasize as requiring a Stay
> could continue until all possible appeals,
> and any post-Judgment Motions, are ex-
> hausted.

Moreover, allowing the Stay to continue gives rise
to the danger, highlighted by the Plaintiffs, that
"[w]itnesses relocate [and] memories fade," and ad-
ditionally prevents "persons allegedly aggrieved
[from seeking] vindication or redress for infinite
periods of time." *Fidelity National Title Ins. Co. v.
National Title Resources Corp.*, 980 F.Supp. 1022,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2008 WL 1945157 (D.Minn.)
(Cite as: 2008 WL 1945157 (D.Minn.))

Page 4

1024 **(D.Minn.**1997), quoting *Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.,* 720 F.Supp. 805, 809 (N.D.Cal.1989), quoting in turn, *In re Mid-Atlantic Toyota Antitrust Litigation,* 92 F.R.D. 358, 359 (D.Md.1981). While the Defendants have legitimate ongoing concerns about protecting their Fifth Amendment privilege, the right to avoid self-incrimination only attaches to individuals, and not to corporate entities, and thus does not extend to the Clinic, or to individuals charged in their official capacities. See, *United States v. White,* 322 U.S. 694, 699 (1944), citing *Hale v. Henkel,* 201 U.S. 43 (1906); see also, *Bellis v. United States,* 417 U.S. 85, 90 (1974)("Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege); *In re Grand Jury Witnesses,* 92 F.3d 710, 712 (8th Cir.1996).

*4 Although the Court considers the possibility that a defendant, such as Anderson, will be called upon to consider whether to waive his Fifth Amendment right as a factor in weighing against the advisability of allowing a civil case to go forward, while a criminal case involving the same defendant is pending, "[a] defendant has no absolute right not to be forced to chose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 326 (9th Cir.1995), citing *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976). Here, the interests of the Plaintiffs, the Court, and the public, outweigh any potential prejudice to the Defendants, were Anderson called upon to appear before the Court in this civil matter before the criminal investigation is resolved. Litigants are deposed and, conceivably, their testimony could lead to State or Federal criminal charges and, the only circumstance that differs here, is that, some time ago, certain of the Defendants were placed on notice that they were under some form of criminal investigation.

Finally, the Defendants argue that lifting the Stay

would not be appropriate, as the parties are engaged in settlement negotiations, see, *Defendants' Memorandum, Docket No. 30,* at p. 2, and, having to maintain a defense in both a civil and criminal matter, would raise a heavy financial burden. However, the Affidavit submitted by the Defendants suggests that settlement negotiations have not been successful, see, *Affidavit of Michael,* supra at ¶ 4, and, while we commend the efforts of the parties to settle this case, absent a Stipulation of Dismissal by the parties, we retain the obligation, which is imposed by Rule 1, Federal Rules of Civil Procedure, to insure the "just, speedy and inexpensive determination" of this matter. Consequently, we cannot further delay the progress of this case solely on the Defendants' suggestion that a settlement may eventually be secured. As to the financial burden of fighting a legal battle on both a civil and a criminal front, we find that such threat is purely speculative, and does not justify the very real burden that continuing the Stay in this matter would impose upon the Defendants, and any relevant witnesses.

NOW, THEREFORE, It is--

RECOMMENDED:

That the Plaintiffs' Motion To Lift Stay [Docket No. 24] be granted.

Not Reported in F.Supp.2d, 2008 WL 1945157 (D.Minn.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.                                                                                    Page 1
Not Reported in F.Supp., 1991 WL 177657 (D.Conn.), 1991-1 Trade Cases P 69,496
**(Cite as: 1991 WL 177657 (D.Conn.))**

**C**

United States District Court, D. Connecticut.
STATE OF CONNECTICUT ex rel. Richard BLU-
MENTHAL, Attorney General of
Connecticut
v.
BPS PETROLEUM DISTRIBUTORS, INC., et al.
**Civ. No. 3:92-CV-00173(WWE).**

July 16, 1991.

Ruling on Plaintiff's Motion to Set Aside Defendant
DeMatteo's Extension of
Time

*Background*
EGINGTON, District Judge.

**\*1** This suit was commenced on March 26, 1991 by
the State Attorney General as *parent patriae* on be-
half of the State of Connecticut and its residents.
The Complaint charges various oil distribution
companies and dealers with violating the Sherman
Act and State anti-trust laws. [FN1] The parties
represent that a grand jury investigation, conducted
by the United States Attorney and the Justice De-
partment, is currently underway in the United
States District Court in New Haven, involving the
same companies and individuals named in this civil
action.

On April 11, 1991, Defendant DeMatteo moved for
an extension of time in which to answer or move
with respect to the Complaint, for a period of thirty
days beyond the time the criminal proceedings
against him were concluded. This Court granted
the extension on April 16, 1991. Six other defend-
ants have similar motions for a stay pending before
this Court. [FN2]

The Plaintiff has now filed a Motion to Set Aside
the extension of time granted to Defendant DeMat-
teo.

For the reasons set forth below, Plaintiff's Motion
to Set Aside Defendant DeMatteo's Extension of
Time will be granted.

*Arguments*
Plaintiff argues that an indefinite stay in this civil
proceeding is unreasonable and unnecessary. The
Plaintiff does not dispute that the possibility of a
criminal charge might make it more difficult for the
Defendant to respond to this civil action.
However, the Plaintiff maintains that this difficulty
does not constitute irreparable prejudice, nor does it
outweigh the interests of the Plaintiff or the public
in proceeding with this civil action. The Plaintiff
contends that the Defendant may assert his fifth
amendment privilege whenever he desires, and the
court may prevent unfair prejudice to the Defendant
by allowing him to amend his pleading at a later
time, and by ruling on individual assertions of fifth
amendment privilege during discovery if and when
the situation arises.

The Defendant maintains that he should not be
forced to choose between defending the civil action
and asserting his fifth amendment rights. He ar-
gues that he can either defend himself against the
civil allegations by divulging privileged informa-
tion, or invoke the fifth amendment privilege and
forego the opportunity to defend himself in the civil
action. He further argues that the discovery gained
in the broader civil action could be used to supple-
ment the more narrow criminal discovery permitted
under the Federal Rules of Criminal Procedure.
The Defendant contends that the Plaintiff would not
suffer any harm from a stay, and might even benefit
because of the judicial economy engendered by
avoiding duplicative proceedings.

*Discussion*
The Constitution does not ordinarily mandate a stay
of civil proceedings pending the outcome of crimin-
al proceedings, rather, a court has discretion to
"stay civil proceedings, postpone civil discovery, or
impose protective orders and conditions 'when the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                 Page 2
Not Reported in F.Supp., 1991 WL 177657 (D.Conn.), 1991-1 Trade Cases P 69,496
(Cite as: 1991 WL 177657 (D.Conn.))

interests of justice seem to require such action ...' " *Securities & Exchange Comm'n v. Dresser Indus.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (citations omitted). A court considers several factors when exercising such discretion. *Golden Quality Ice Cream, Inc. v. Deerfield Specialty* [1980-2 TRADE CASES ¶ 63,468], 87 F.R.D. 53, 56 (E.D.Pa.1980), and the Court will examine each of the relevant factors separately.

*Plaintiff's Interest in Proceeding and Potential Prejudice of Delay*

*2 Plaintiffs in federal court have the right to pursue their cases, and to expeditiously vindicate their claims. *Golden Quality Ice Cream,* 87 F.R.D. at 56. Stays in proceedings may result in prejudice to plaintiffs because "[w]itnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end." *In Re Mid-Atlantic Toyota Antitrust Litigation* [1981-1 TRADE CASES ¶ 64,069], 92 F.R.D. 358, 359 (D.Md.1981).

The Plaintiff would be prejudiced by an indefinite stay in this civil proceeding because, as noted above, witnesses will inevitably experience fading memories with the passage of time. In addition, vital documentary evidence could be lost or destroyed.

*Burden Imposed Upon Defendants*

Defendants are requesting a stay of the civil proceedings until the grand jury investigation and any resulting criminal proceedings are complete. The case for staying a parallel proceeding is weaker when no indictment has been returned, and when a fifth amendment privilege is not implicated. *Securities & Exchange Comm'n.,* 628 F.2d at 1376.

The Plaintiff maintains that a federal grand jury is just beginning its inquiry into this matter, and the Plaintiff argues that it could be months or years before any indictments are handed down. The Court is persuaded that the stay requested by the Defend-

ant is overbroad in scope.

The Court is aware that a defendant who invokes the fifth amendment privilege could suffer potential prejudice, but the Court believes that the Defendant will be protected from prejudice by less extraordinary means than staying this civil proceeding for an indefinite period of time. This Court will not hesitate to limit civil discovery, as necessary, to accommodate any defendant's assertion of the fifth amendment privilege, and the court will "**rule on individual assertions of Fifth Amendment privilege if and when such assertions occur.**" *In Re Mid-Atlantic Toyota,* 92 F.R.D. at 360.

The Defendant also argues that there is a danger that the broad civil discovery could be used to supplement the more narrow criminal discovery. However, the Plaintiff has expressly represented that there is no basis for such an allegation, and this Court will hold the Plaintiff to that representation. See *In Re Mid-Atlantic Toyota,* 92 F.R.D. at 360.

*Convenience of the Court*

The third factor refers to a court's attempts to avoid duplicative judicial effort whenever possible. Here, there are no duplicative judicial efforts to avoid because no indictments have been handed down. See *In Re Mid-Atlantic Toyota,* 92 F.R.D. at 360.

*Public Interest*

In the instant case, the State Attorney General, as *parens patriae,* has brought an anti-trust action on behalf of the State of Connecticut for loss and damage to the general welfare and economy of the State, and on behalf of all residents who may have suffered loss or damage from the defendants' alleged conduct. The Court is persuaded that public interest considerations favor a denial of a stay. This civil litigation involves allegations of price-fixing of home heating oil in the New Haven metropolitan area. The public obviously has a significant interest in the outcome of such litigation,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 177657 (D.Conn.), 1991-1 Trade Cases P 69,496
**(Cite as: 1991 WL 177657 (D.Conn.))**

Page 3

"whatever that outcome may be." *In Re Mid-Atlantic Toyota,* **92 F.R.D. at 360.** The public interest in protecting consumers from the harm engendered by alleged price-fixing conspiracies mandates prompt action by the government officials charged with protecting the public.

*Conclusion*

**\*3** The Court is persuaded that there are effective and less obtrusive means available to accommodate the varied interests during the course of this civil proceeding. However, the Court emphasizes that it reserves the right to "re-evaluate the situation if and when the balance of burdens, and private and public interests so requires." *Arden Way Associates v. Boesky,* 660 F.Supp. 1494, 1500 (S.D.N.Y.1987).

For the reasons discussed above, Plaintiff's Motion to Set Aside Defendant DeMatteo's Extension of Time is hereby Granted.

> FN1. The named Defendants are BPS Petroleum Distributors, Inc., Mary Randall, Ralph Caruso, Robert Detrick, William DeMatteo, Oyster River Petroleum, Inc., Edward Granfield, Alpine Heating & Cooling Co., Inc., Salvatore Camera, Leo Scillia, and John Chaski.

> FN2. Ralph Caruso, Mary Randall, Edward Granfield, Oyster River Petroleum, Inc., Leo Scillia and Robert Detrick have all moved for a stay in this proceeding. To date, BPS Petroleum, Alpine Heating & Cooling, Inc., Salvatore Caamera, and John Chaski have not moved for a stay.

Not Reported in F.Supp., 1991 WL 177657 (D.Conn.), 1991-1 Trade Cases P 69,496

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

## AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA | ) | **In Re:  Dennis E. Hecker** |
| | ) ss: | **Bankruptcy Case No.:  09-50779** |
| COUNTY OF CASS | ) | **Chapter 7 Bankruptcy Case** |
| | | **Adversary No. 09-05035** |

     Carmen D. Rohr, being duly sworn, deposes and says that she is a resident of the City of West Fargo, State of North Dakota, is of legal age; and that she served the within

**CORNERSTONE BANK'S COMBINED OBJECTION AND BRIEF IN OBJECTION TO DENNIS E. HECKER'S MOTION FOR STAY OF ADVERSARY PROCEEDING UNTIL CONCLUSION OF GRAND JURY PROCEEDINGS AND/OR INDICTMENTS**

on October 15, 2009, by electronic means.

The following parties were served automatically by the United State Bankruptcy Court at the following e-mail addresses:

    **William Skolnick**                 **wskolnick@skolnick-shiff.com**

     To the best of affiant's knowledge, the given addresses are the actual post office addresses and e-mail addresses of the parties intended to be so served.  The above documents are mailed in accordance with the provisions of the Minnesota Rules of Civil Procedure.

                       */s/ Carmen D. Rohr*
                       Carmen D. Rohr

Subscribed and sworn to before me this 15th day of October 2009.

                       */s/ Robyn Maxwell*
**(Seal)**                     Notary Public